# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHICAGO TRUCK DRIVERS HELPERS
and WAREHOUSE WORKERS UNION
PENSION FUND et al.

       Plaintiff,

       v.

CPC LOGISTICS, INC.

       Defendant.

No. 10 cv 2314
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

This is the last episode in an ERISA case pitting the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund ("CTDU" or the "Fund") against CPC Logistics, Inc. ("CPC"). The Fund was an ERISA multi-employer benefit plan from which CPC withdrew. The Fund assessed withdrawal liability against CPC which challenged the assessment. CPC won a reduction of $487 thousand dollars (and change) in the Review process, then it went to arbitration, which cut another $1 million and 93 thousand dollars (and change) from the assessment.

The Fund filed here a complaint to vacate or modify the arbitration award. CPC counter-complained seeking only enforcement of the award and attorneys' fees and costs under ERISA. I denied the motion to vacate or modify the award. The Fund appealed my decision. In light of that I put off briefing on attorneys' fees and costs until the appeal was decided.

The Court of Appeals affirmed my ruling and the parties have briefed the question of fees and costs. The law is clear that I have discretion to award either prevailing party their fees and costs (including attorneys' fees). The Court of Appeals has written that awards for fees and

costs are justified where "the speedy and cheap resolution that Congress sought when directing arbitration of withdrawal liability cases has been defeated" and this observation was made in a case involving the Fund. *Continental Can Company v. Chicago Truck Drivers Helpers and Warehouse Workers Union (Independent) Pension Fund,* 921 F.2d 126, 128 (7th Cir. 1990). This policy seems to apply broadly to all arbitrations over delinquent contributions. There are two generally applicable tests for awarding fees and costs in an ERISA case. The first test looks to the following five factors: "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of fees; (3) whether or not an award of attorney's fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496, 505-06 (7th Cir. 2011). The second test "looks to whether or not the losing party's position was 'substantially justified.'" *Id.* at 506. CPC need not prove bad faith on the part of CTDU. See *Loomis v. Exelon, Corp.* 658 F.3d 667, 675 (7th Cir. 2011).

I.    <u>CPC's Position</u>

CPC argues as follows: the Fund lost in arbitration on the only key issue: the correctness of its calculation of the amount assessed because of its use of the "cap" which violated ERISA. Two lesser issues existed. One of them was left undecided by the arbitrator who believed the issue may be mooted by his decision about the cap. In dicta, the arbitrator did believe that the Fund should apply a $487,000 credit as a prepayment of liability, which eventually it did. The other issue was whether interest should be paid on that credit. The Fund won on that issue which was small change and CPC did not appeal. In simple terms, this was a big win for CPC and a big

2

loss for the Fund.  Basically the Fund determined withdrawal liability by using actuarial

assumptions and methods of its own choosing and, by so doing, disregarded its actuary's best

estimate in disregard of ERISA rules and practice.  On this point, all adjudicators of this case

were in agreement.

The Fund, CPC says, dragged its feet in getting to an arbitrated resolution and in complying

with the resolution once issued.  The Fund was unwilling to produce trustees for

depositions even though they were the ones who did not accept the actuary's best

estimate.  The litigation conduct supports the proposition that the Fund knew it was in the wrong

and, in those circumstances, the Fund benefits from delay.  All this despite the law's

expressed purpose to promote quicker and less costly resolution of ERISA disputes.

II.     The Fund's Position

 The Fund argues that CPC does not merit an award for its attorneys' fees in arbitration

because it did not seek fees from the arbitrator, as it could have.  CPC failed in its efforts to have

the arbitrator impose sanctions for delay in the arbitrable process and these were not raised on

appeal from the arbitrator's award.    The various appeals that the Fund took had a substantial

basis; even though it did not prevail, it should not have to pay attorneys' fees and costs.  In

fact, on some questions, it prevailed with the arbitrator on CPC's claim for a credit of

$683,971.  What CPC won was a reduction withdrawal liability from $3,530,405 to $2,437,401.

Viewed as a whole, CPC lost some significant battles since its own claim of its withdrawal

liability was significantly lower than the one it was required to pay, i.e. $1,265,930.  Both sides

won and both sides lost—a clear indicia of a substantial basis for the Fund's legal

conduct.  Finally the Fund argues that the award of fees is, under these special circumstances,

unjust.  The Fund is in a precarious position.  Many of its contributor employers (once 228

employers and now 39) went into bankruptcy and the Fund is nearly insolvent. Pensions were "saved" by having the Pension Benefits Guarantee Corporation fund, at a reduced rate, the pensions of those associated with bankrupt employers. This procedure left the Fund with fewer employers whose unfunded vested liability is at least $71 million. Benefit accruals ended in 2007. After the Pension Benefit Guaranty Corporation took over payments for some participants, its action extended the date of insolvency from 2013 to 2019. Requiring payment of fees and costs would be unjust.

III.   <u>My Ruling</u>

In this case, I refused to entertain the motion to impose attorneys' fees and costs until the Court of Appeals decided the case on appeal. The Fund takes comfort in this by reading between the lines that I found uncertainty as to whom among the parties was right. I did say that I was not sure where this "fairly novel" issue was going to take us. This remark is construed as expressing my opinion that "it is possible the Court of Appeals" might agree with either party. Those words did appear in my comments but my reluctance to reach the question of substantial justification for the Fund's litigation posture rested not on my assessment of the weight to be given a losing argument in a fee dispute. It rested instead on the notion that the Court of Appeals might find that the issues that were presented to me were not, in fact, the appropriate issues for decision or that neither side's argument was properly on point or that the case should be resolved on grounds that were unexpected. My concern was my resolving a choice between the plaintiff's position and defendant's position when a third position was the one the Court of Appeals thought correct. I did not consider the merits of the "fees and costs" positions because I wanted to "wait and see what happens at the Court of Appeals." Now I know.

I begin by denying the motion for fees and costs for the arbitral proceedings. I do this on two grounds. One is the fact that arbitral proceedings were had over several issues, not just the one that defeated the Fund's defense of its calculation of withdrawal liability. Two is the fact that one could make an argument of sorts that it was alright (or, at least, understandable) to disregard the actuary's best estimate. In any event, the claim was not pressed in arbitration when it could have been and is now lost to CPC.

I also deny the fees and costs associated with the proceedings in District Court. The argument made against the arbitrator's decision (on an uncommon issue) might have some substantial justification to pursue review. What remains are the petition for fees and costs paid by CPC to defend against the appeal to the Court of Appeals. By the time both the arbitrator and I had decided the issue and delivered our opinions, I find that there was no substantial justification for further review. In light of the analysis of two neutral decision makers the Fund could not reasonably conclude in good faith that its conduct was defensible when it ignored the requirement of ERISA to use actuarial best method. The fact that the Fund won on a significant issue or two does not redeem their unjustified battle on the cap issue.

What is left for the Fund is its ability to pay an award of fees. It concedes it has the cash on hand to do that but it can avoid this "if special circumstances make an award unjust." *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F. 3d 819, 826 (7th Cir. 2001). The claim of special circumstances requires an assessment of the harm that might be done to the Fund which, in turn, depends on the amount of fees and costs reasonably attributed to CPC's defense on appeal. While no loss of money is insignificant to the Fund, there may be a sum of the price of defending the appeal that serves as an incentive to the Fund and to other similar funds to follow ERISA requirements and, yet, is an economically tolerable loss for the Fund's members and

contributors.  The parties should therefore, by agreement or by opposing motions, present fees and cost calculations to the Court for determination of the correct sum and judgment of an appropriate amount to be paid in these special circumstances.

ENTER:

James B. Zagel
United States District Judge

DATE: June 10, 2013